**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

SEAN A. BENTON,

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

1:18-cv-09478-NLH

**OPINION**

---

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S. WHITE HORSE PIKE
AUDUBON, NJ 08106

    *On behalf of Plaintiff*

PATRICIA ANNE STEWART
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of

1

("SSI")[2] under Title II and Title XVI of the Social Security Act.[3] 42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, August 1, 2012. For the reasons stated below, this Court will affirm that decision.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On March 21, 2013, Plaintiff, Sean A. Benton, protectively filed[4] an application for DIB, and on March 4, 2014, Plaintiff

---

quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI. See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945). The Court will provide citations only to the DIB regulations. See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

[4] A protective filing date marks the time when a disability

2

protectively filed an application for SSI alleging that he became disabled as of August 1, 2012.[5] Plaintiff claims that he can no longer work at his previous job as a toll collector because he suffers from a substance abuse disorder and affective disorder (bipolar).[6]

After Plaintiff's initial claim was denied and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on January 5, 2017. On April 19, 2017, the ALJ issued an unfavorable decision. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on April 23, 2018, making the ALJ's April 19, 2017 decision final. Plaintiff brings this civil action for review of the

---

applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that his onset date of disability is August 1, 2012, the relevant period for Plaintiff's SSI claim begins with his March 4, 2014 application date, through the date of the ALJ's decision on April 19, 2017. See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he or she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he or she satisfies the eligibility requirements, which cannot predate the date on which an application was filed). This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

[6] Plaintiff was 26 years old at the time of the alleged disability onset date, which is defined as a younger individual (age 18-49). (20 C.F.R. § 416.963.)

3

Commissioner's decision.

**II. DISCUSSION**

    **A.   Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v.

Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although

5

an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant

work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[7] for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national

---

[7] The regulations were amended for various provisions effective March 27, 2017. See 82 F.R. 5844. The parties do not argue that any of these amendments are relevant to Plaintiff's appeal.

7

> economy. If he is incapable, he will be found
> "disabled." If he is capable, he will be found "not
> disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy. This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of substance abuse and affective disorder were severe. The ALJ then considered steps three through five in two parts. First, the ALJ considered Plaintiff's substance abuse

8

and affective disorder together.  When considered together, at step three the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the listed impairments.  At step four, the ALJ determined that Plaintiff's residual functional capacity ("RFC") did not allow him to work at his past job, and at step five that no jobs in the national economy existed that Plaintiff could perform.

Second, the ALJ considered Plaintiff's mental impairment separate from his substance abuse.[8]  The ALJ again found that Plaintiff's mental disorder did not equal the severity of one of the listed impairments.  The ALJ determined a different RFC based on his mental impairment alone if Plaintiff stopped his

---

[8] An individual cannot be found disabled if drug or alcohol abuse was a contributing factor material to the Commissioner's determination that the individual is disabled.  When drug addiction is at issue, and an individual is found disabled at any step of the sequential evaluation process, the ALJ must determine whether drug addiction is a "contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a).  To make this determination, the ALJ must decide whether a claimant would still be disabled if he stopped abusing drugs.  20 C.F.R. §§ 404.1535(b), 416.935(b).  If a claimant would not be disabled if he stopped abusing drugs, then drug addiction is material to the determination of disability and the claimant will not be found disabled.  20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).  Conversely, if a claimant would still be disabled independent of drug abuse, then drug addiction is not considered material to the determination of disability and the claimant will be found disabled. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(a).

9

substance abuse and found that even though he was not able to perform his past work as a toll collector, he retained the RFC to perform a full range of work with certain restrictions due to his non-exertional limitations. The ALJ found that Plaintiff was capable of making a successful adjustment to other jobs in the national economy, such as a general worker, cart attendant,[9] and tree planter. The ALJ concluded that because Plaintiff's substance use disorder was a contributing factor material to the determination of disability, Plaintiff could not be found disabled under Social Security regulations.

Plaintiff argues that the ALJ erred in two ways. Plaintiff argues that there is only a one-sentence difference between the ALJ's two RFC determinations, and the ALJ's decision is silent as to why the limitations from the first RFC was excluded by the ALJ in the second RFC. Plaintiff also argues that the ALJ did not properly support the finding that Plaintiff was capable of performing the jobs set forth in the decision.

### 1. Whether the ALJ erred in her RFC determination

The ALJ made two RFC determinations,[10] one considering Plaintiff's mental impairments and his substance abuse, and the

---

[9] As discussed below, the decision states "car attendant," but that is a typographical error. The job is a "cart attendant." (R. at 71.)

[10] The RFC reflects "what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).

10

other considering only Plaintiff's mental impairments.

> [1] After careful consideration of the entire record, I find that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform a full range of work at all exertional levels[11] but with the following nonexertional limitations: able to understand, remember, and carry out simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes. The claimant can work two hours without a break. The claimant can have occasional contact with supervisors and coworkers in proximity, but not on joint or shared tasks, working primarily with things rather than people and no contact with the public. On at least an occasional basis, the claimant will have inappropriate contact with supervisors or coworkers and conduct unacceptable to the employer.

(R. at 19.)

> [2] If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: able to understand, remember, and carry out simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes. The claimant can work two hours without a break. The claimant can have occasional contact with supervisors and coworkers in proximity, but not on joint or shared tasks, working primarily with things rather than people and no contact with the public.

(R. at 27.)

Plaintiff argues that the final sentence of the first RFC –

"On at least an occasional basis, the claimant will have

---

[11] See 20 C.F.R. § 404.1567 ("To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

inappropriate contact with supervisors or coworkers and conduct unacceptable to the employer." - is missing from the second RFC without any explanation from the ALJ. Because of this, Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence.

Contrary to Plaintiff's argument, the ALJ provides a detailed analysis of the record evidence to explain that when Plaintiff's substance abuse is removed from the analysis, Plaintiff's ability to interact with others improves to a level that renders him capable of performing work in the national economy.

When the ALJ presented the first RFC to the vocational expert ("VE"), the VE testified that no employer would tolerate unacceptable behavior, and no jobs existed under that RFC. (R. at 26.) The ALJ continued to examine the record evidence and found that "the claimant has an affective disorder separate from his substance abuse disorder," and "[b]ased on the record detailed above, if the claimant stopped abusing substances, he would still have some work-related limitations, but not to the same degree." (R. at 28.) The ALJ concluded:

> In terms of the claimant's alleged impairments, his medical treatment has been conservative. He has been hospitalized only on rare occasion for his impairments. His medications are not unusual for either type or dosage, and they appear to have been effective and with few adverse side effects. Further, the record indicates that the claimant engages in a reasonably broad range of daily living activities. While

12

> the claimant appeared sincere and insightful about his
> issues, I find that his allegations are nevertheless
> inconsistent with the overall record. The medical evidence
> of record reflects a greater substance abuse problem than a
> mental one. The medical evidence is not entirely consistent
> with the claimant's testimony.

(R. at 29.)

After discussing the effect Plaintiff's substance abuse played in his RFC, the ALJ determined that the limitation included in the first RFC was not necessary in the second RFC which considered Plaintiff's mental impairments alone. Because the ALJ properly supported her RFC determinations, the Court does not find that the ALJ erred on this issue. See Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019) (reiterating that the threshold for such evidentiary sufficiency under the substantial evidence standard is not high, and it "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (citations omitted)).

### 2. Whether the ALJ erred at step five

Once it has been determined that a claimant is not capable of performing his past relevant work, the burden shifts to the ALJ to show that the claimant's RFC permits the claimant to perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(b)-(f). In this case, the ALJ determined that Plaintiff's RFC based on his mental

impairments alone rendered him capable of performing three jobs: (1) general worker (DOT code 979.687-034), which requires a residual functional capacity for medium work, has an SVP of 1, and has an availability of 3,708 jobs nationally; (2) cart attendant (DOT code 920.687-014), which requires a residual functional capacity for medium work, has an SVP of 2, and has an availability of 128,033 jobs nationally; and (3) tree planter (DOT code 452.687-018), which requires a residual functional capacity for heavy work, has an SVP of 1, and has an availability of 1,940 jobs nationally.[12]

Plaintiff argues that the ALJ erred in this finding on each of these three jobs. Plaintiff points out that even though the VE testified that the general worker job is a helper position that requires interaction with people, and the ALJ agreed that such a job did not align with Plaintiff's RFC, the ALJ nonetheless included the position in her decision. Plaintiff also argues that the "car attendant" job is actually a "cart attendant," which is akin to a bagger in a grocery store, and even though that job suggested by the VE was not challenged by Plaintiff's representative at the hearing, such a job obviously

---

[12] The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.

requires contact with people, which is contrary to Plaintiff's RFC.[13]

Finally, Plaintiff argues against the tree planter job as follows:

> That leaves us with only one, solitary job; that of tree planter, of which the vocational witness stated, and the Administrative Law Judge found, there were only 1,940 such jobs in the United States. We know of no case that definitively states what actually are "a significant number of jobs" at Step Five. At this point, we only suggest that even if there were this number of people engaged full time as tree planter, being able to perform that one, solitary occupation would not amount to a significant number in an economy that employs 155,962,000 thousand people as of last report.
>
> There are other problems as well. As it was not raised at the hearing, the residual functional capacity found by the Administrative Law Judge included the idea that Benton was only able to have "occasional contact with supervisors". We can imagine that there are jobs where in time spent,

---

[13] The DOT code 920.687-014 for "cart attendant" is actually titled "bagger (retail trade) alternate titles: grocery packer." While the description provides for some functions that require interaction with customers, many other functions do not:

> Bags groceries at grocery store: Packs grocery items in sacks or cartons, arranging heavy and bulky items at bottom of sack or carton. Verifies price of grocery item in question against price of items on stock shelf, upon request. Carries packed sacks, or places sacks in grocery cart, and pushes cart to customer's vehicle, upon request. Places groceries into customer's vehicle. Collects shopping carts from parking lot and surrounding areas and returns carts to store. Replaces cleaning and packing supplies used at grocery checkout counter. Returns grocery items left at checkout counter to specified stock shelves. Cleans work area and carries empty bottles and trash to storeroom. May price and place grocery articles on shelves. May assist in unloading delivery trucks.

Id.

> there may well be jobs, millions of jobs, where a person
> does not spend greater than one-third of the day in contact
> with their supervisor as would be the limit if they only
> interacted "occasionally" with their supervisors.  What we
> cannot imagine, however, is that there is any job where a
> person has a supervisor where if they are precluded from
> interacting with a supervisor at all times when the
> supervisor wants to interact with them, that they could
> maintain any job.  It is not the quantity of interaction
> that is problematic, but the reason that they are limited
> due to psychological problems that would make real world
> work impossible.  That limitation, alone, if valid, should
> lead to the conclusion that all work is impossible outside
> a sheltered workshop.  That this question is now being
> asked frequently and that it is not always challenged for
> the nonsense type of question that it is, is a shame.  But
> whether challenged or not, the testimony remains nonsense
> and a decision that relies on nonsense cannot be found
> supported by substantial evidence.

(Docket No. 10 at 25-26.)

The Court notes Plaintiff's philosophical objection to the nature of VE testimony and data in Social Security cases.  The United States Supreme Court recently touched on that issue and observed that if VEs supported their conclusions with supporting data, VEs' testimony "would be even better - more reliable and probative" and "would be a best practice for the SSA and its experts."  Biestek v. Berryhill, 139 S. Ct. 1148, 1155 (U.S. April 1, 2019).  The Supreme Court concluded, however, that VEs do not need to provide an applicant with the data supporting their testimony regarding suitable jobs and statistics in order to "clear (even handily so) the more-than-a-mere-scintilla

threshold." Id. at 1156.[14]

Thus, the Court finds Plaintiff's argument on this issue uncompelling for two reasons. First, Plaintiff points only to his own conjecture regarding the number of tree planter jobs in the national economy, and he did not challenge the VE's testimony at the hearing. Moreover, as Defendant indicates, the

---

[14] This Court previously addressed a similar argument where the plaintiff questioned the source and validity of the VE's statistics that purported to support the availability of jobs in the national economy, including that the jobs identified by the VE had not been updated since 1977 (caretaker, photocopy machine operator, marker and addresser) and 1986 (taper and document preparer) and were woefully outdated. Jean-Pierre v. Commissioner of Social Security, 2017 WL 4316880, at *9 (D.N.J. 2017). This Court found, however:

> Even though this Court recognizes the concerns expressed by former Judge Posner and the Seventh Circuit, and echoed by Plaintiff in this case, the SSA Regulations direct that an ALJ is to take notice of job information available from various governmental and other publications, such as the Dictionary of Occupational Titles, County Business Patterns, Census Reports, Occupational Analyses, and Occupational Outlook Handbook, as well as engage the services of a vocational expert. 20 C.F.R. § 404.1566(b). It is not for this Court to reform the methodology that SSA VEs use to determine available and appropriate jobs in the national economy that match a claimant's RFC. The Court also cannot otherwise direct that an ALJ should not consider the DOT and VE testimony when performing the step five analysis, which would be in contravention of SSA regulations.

Id. (citations omitted). The Court notes that the Supreme Court in Biestek v. Berryhill, 139 S. Ct. 1148, 1153-54 (U.S. April 1, 2019) affirmed the Sixth Circuit, which joined "the ranks of unconvinced courts" which had rejected the Seventh Circuit's categorical rule precluding a vocational expert's testimony from qualifying as substantial evidence if the expert had declined an applicant's request to provide supporting data.

17

Third Circuit has found that 200 and 569 jobs to be "significant," which shows that 1,940 tree planter jobs to be "significant." Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (200 jobs); Ahmad v. Comm'r of Soc. Sec., 531 F. App'x 275, 278 (3d Cir. 2013) (569 jobs); see also Young v. Astrue, 519 F. App'x 769, 772 (3d Cir. 2013) ("[T]here is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act.").

Second, even accepting that Plaintiff was not capable of performing the general helper and cart attendant jobs, the ALJ only needs to establish that a claimant is capable of performing one job that exists in significant numbers in the national economy. See Reed v. Commissioner of Social Security, 2018 WL 5617549, at *6 (D.N.J., 2018) (citing Nalej v. Berryhill, 2017 WL 6493144, at *11 (D.N.J. 2017) (citing 20 C.F.R. § 416.966(b))(explaining that SSA regulations provide that work exists in the national economy when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, he did not err as to the third job, and that finding as to only one job was sufficient to support his determination that the plaintiff was not disabled)). As discussed, the Court does not find Plaintiff has demonstrated that the ALJ's determination

that Plaintiff's RFC enabled him to work as a tree planter is not supported by substantial evidence.

**III. Conclusion**

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations. Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). The Court finds that the ALJ's determination that Plaintiff was not totally disabled as of August 1, 2012 is supported by substantial evidence. The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date: May 29, 2019           s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.